UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDWARD TUCK COLBERT, et al.,**     **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-2442** |
| **OWEN BRENNAN, et al.,**     **Defendants** | **SECTION "E"** |

**ORDER AND REASONS**

Before the Court is a motion to dismiss[1] filed by plaintiffs Edward Tuck Colbert ("Colbert") and Kenyon & Kenyon, LLP ("Kenyon") (collectively, "Plaintiffs"[2]). Plaintiffs seek to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), counterclaims[3] filed by defendants Shawn Tiffany Brennan and Samantha Scott Brennan, in their capacities as independent co-executors of the Succession of James Charles Brennan (the "Succession"), and to dismiss counterclaims[4] filed by defendant Owen Brennan ("Pip"). The Succession and Pip both filed oppositions to the motion to dismiss.[5] Plaintiffs filed a reply in further support of their motion to dismiss.[6] On February 20, 2013, the Court heard oral argument on the motion to dismiss from counsel for Plaintiffs, counsel for the Succession, and

---

[1] R. Doc. 23.

[2] On June 18, 2013, Brennan's Claims, LLC, as assignee of Plaintiffs' rights, was substituted for Edward Tuck Colbert and Kenyon & Kenyon, LLP as the proper party plaintiff in this case. *See* R. Doc. 132. This substitution does not affect the Court's resolution of the pending motion to dismiss.

[3] R. Doc. 13.

[4] R. Doc. 15.

[5] *See* R. Doc. 25 (The Succession's opposition to the motion to dismiss); R. Doc. 27 (Pip Brennan's opposition to the motion to dismiss).

[6] R. Doc. 32.

1

counsel for Pip.[7]

For the reasons set forth below, Plaintiffs' motion to dismiss the counterclaims asserted by the Succession and by Pip is granted, and those counterclaims are dismissed in their entirety.

## BACKGROUND

### I. Plaintiffs' Causes of Action

Plaintiffs assert two causes of action in this case: (1) that Brennan's, Inc.'s repurchase/redemption of stock from the Succession and Pip was unlawful, because Brennan's, Inc. was insolvent at the time, thus entitling Plaintiffs to exercise their rights under Louisiana Revised Statute 12:93(D) directly against Pip and the Succession, in amounts equal to the unlawful payments already made and any future unlawful payments;[8] and (2) a revocatory action under Louisiana Civil Code Article 2036 *et seq.* against Brennan's, Inc., the Succession, and Pip, asserting that the payments made to the Succession and to Pip caused or increased Brennan's, Inc.'s insolvency and are thus subject to revocation.

### II. The Succession's Counterclaims

In addition to answering Plaintiffs' complaint and asserting a crossclaim against Brennan's, Inc., the Succession has filed counterclaims against Plaintiffs. In those counterclaims, the Succession asserts a revocatory action against Plaintiffs, asserting that the transfer/assignment to Plaintiffs of Brennan's, Inc.'s claim for settlement proceeds

---

[7] R. Doc. 42 (Minute entry from February 20, 2013 oral argument).

[8] For a more detailed exploration of this cause of action, *see* R. Doc. 127 (June 11, 2013 Order denying Plaintiffs' motion for summary judgment on their 12:93(D) claim against the Succession).

arising out of the BP Oil Spill caused or increased Brennan's, Inc.'s insolvency, and thus the assignment is subject to revocation. The Succession also contends that, if the Louisiana Fourth Circuit Court of Appeal affirms a state trial court's decision granting summary judgment in favor of Colbert and Kenyon on Brennan's, Inc.'s legal malpractice action against them,[9] Brennan's, Inc.'s failure to properly oppose the motion for summary judgment[10] constitutes a failure on the part of Brennan's, Inc. to properly exercise a right, and that failure either caused or increased Brennan's, Inc.'s insolvency. The Succession thus contends that it is entitled to assert a legal malpractice action against Kenyon as an oblique plaintiff pursuant to Louisiana Civil Code article 2044 *et seq.*

### III.  Pip Brennan's Counterclaims

Pip has also answered Plaintiffs' complaint, asserted a crossclaim against Brennan's, Inc., and asserted counterclaims against Plaintiffs. Pip's counterclaims are virtually identical to the counterclaims asserted by the Succession.

---

[9] After being sued for legal malpractice in state court by Brennan's, Inc., Colbert and Kenyon counterclaimed for unpaid attorney's fees. The state trial court granted Colbert's and Kenyon's motion for summary judgment on the counterclaim for unpaid attorney's fees, which led to Colbert and Kenyon being judgment creditors of Brennan's, Inc. The trial court also granted Brennan's, Inc.'s motion for summary judgment that Theodore Brennan was not individually responsible for the debt owed by Brennan's, Inc. to Colbert and Kenyon. In addition, the state trial court granted Colbert and Kenyon's motion for summary judgment on Brennan's, Inc.'s legal malpractice action, holding that Brennan's, Inc. did not have a claim for legal malpractice. Colbert and Kenyon appealed the finding with respect to the "piercing the corporate veil" issue, while Brennan's, Inc. appealed the finding with respect to the legal malpractice action. The Louisiana Fourth Circuit Court of Appeal affirmed the trial court's finding with respect to the piercing the corporate veil issue and remanded the case with respect to the legal malpractice action so the parties could prepare a better record. Before the appeal was re-lodged, the claim was dismissed with prejudice by the parties. The Court takes judicial notice that motions have been filed in the state court to revive the state court legal malpractice action. As of the date of this Order, the state court action and appeals remain dismissed with prejudice.

[10] The Succession contends that summary judgment on the malpractice issue was only granted in Plaintiffs' favor only because Brennan's, Inc. "failed to properly oppose" that motion.

**ANALYSIS**

### I.  Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim if the claimant fails to set forth a factual allegation in support of its claim that would entitle it to relief (i.e. for "failure to state a claim"). *See, e.g. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). Those factual allegations "must be enough to raise a right to relief above the speculative level." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court must accept all well-pled facts as true and must draw all reasonable inferences in favor of the non-moving party, *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009), but the Court need not accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

### II.  The Revocatory Action Counterclaims

With respect to the revocatory action counterclaims, Plaintiffs argue the assignment to them of Brennan's, Inc.'s claim for BP settlement proceeds is not revocable under Louisiana law because the assignment was not a transfer of an "asset," but instead a "consensual security interest." Plaintiffs also argue that no money actually changed hands, and thus, even if the assignment could be considered a transfer of an asset, the assignment

is nevertheless not revocable because it was a "balance sheet neutral" payment of a just and due debt.

Under Louisiana law, the revocatory action is the "civil law analogue to the common law suit to set aside a fraudulent conveyance." LA. CIV. CODE art. 2036 cmt. (c). Article 2036 states that "[a]n obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency." Thus, in order for an obligee to annul an act of the obligor, the obligee must establish two elements: (1) an act or failure to act on the part of the obligor that causes or increases the obligor's insolvency; and (2) that the act occurred after the obligor's rights arose. *See Parish Nat'l Bank v. Wilks*, 04-1439 (La. App. 1 Cir. 8/3/05); 923 So.2d 8, 10. As such, "anteriority of the debt and insolvency of the debtor are prerequisites to the revocatory action." LA. CIV. CODE art. 2036 cmt. (f); *see also Lewis v. Hood*, 97-2118 (La. App. 1 Cir. 11/6/98); 721 So.2d 1078, 1080. For purposes of the revocatory action, "[a]n obligor is insolvent when the total of his liabilities exceeds the total of his fairly appraised assets." LA. CIV. CODE ANN. art. 2037.

In *Warren v. Bergeron*, 93-899 (La. App. 1 Cir. 4/18/94); 636 So.2d 1013, the Louisiana Court of Appeals, First Circuit, analyzed the changes to the revocatory action after a 1984 revision to the Louisiana Civil Code. *Id.* at 1017. The *Warren* court explained:

> Under the prior law, contracts or acts transferring ownership of property or giving a determinate right on it were within the purview of the Revocatory Action. The prerequisites for the Revocatory Action under the former law were: (1) insolvency of the debtor; (2) injury to the creditor; (3) intent to defraud the creditor and (4) preexisting and accrued indebtedness. A contract was deemed to have been made in fraud of creditors when the obligee knew the obligor was insolvent and the contract gave an advantage to the creditor/obligee over other

5

> creditors of the obligor. If the fraud consisted merely of giving a preference to one creditor over other creditors to secure a just debt, and the value of the security was commensurate with the amount that was justly due and owing, the recourse of the disadvantaged creditors was that the advantaged creditor would lose the advantage secured by the contract.

*Id.* at 1016 (internal citations and quotation marks omitted). The *Warren* court further explained the changes to the revocatory action effected by the 1984 amendment:

> In the 1984 Obligations Revision several substantive changes were made in the Revocatory Action. . . . The primary change from the prior law is that the fraud element of the prior law has been abandoned for the objective test of whether the act causes or increases the obligor's insolvency. Another major change is that the substance of former articles 1968, 1983, and 1984 which dealt with the giving by the obligor of an advantage or preference to a creditor over other creditors of the obligor, were not reproduced in the 1984 Obligations Revision. Comment (g) of article 2036 provides: "The articles in this section do not address situations in which an already insolvent obligor gives an unfair advantage to one of his creditors. Situations of that kind are regulated by federal bankruptcy law."
>
> The new law eliminates the availability of the Revocatory Action for the mere giving of a preference to a creditor by means of a security device for the payment of a just debt, when the value of the security is commensurate with the amount of the debt. . . . [A]cts granting only a security interest would be revocable only in bankruptcy and those causing or increasing insolvency would be revocable under the civil code.

*Id.* at 1016-17 (internal citations omitted). The Court finds the *Warren* court's discussion of this change in the law instructive in its analysis in this case. As evidenced by these passages, it clear that the revocatory action, in its current iteration, does not allow for the revocation of an act that merely gives preference to one creditor over another. *Id.* Instead, as the *Warren* court explained, the revocatory action allows only for the revocation of certain acts by an insolvent debtor that cause or increase the debtor's insolvency, such as

a pledge securing a fraudulent or simulated debt, a pledge that was actually a dation en paiement, a pledge securing a debt for which the fee causing the debt was not earned by the obligee, or a pledge of stock or property that was greater than the just and owing debt for which the pledge provided security.  *Id.* at 1017.

Even taking as true the allegations in the revocatory action counterclaims asserted by Pip and the Succession, the Court finds those counterclaims fail to state a facially plausible cause of action.  To the extent the assignment of the BP settlement proceeds is a security interest which merely grants a preference to one creditor over another, the revocatory action does not apply, and thus the counterclaims fail to state a claim for revocation under Louisiana law.  *Warren*, 636 So.2d at 1016-17.  Alternatively, to the extent the assignment of the BP settlement proceeds is a pledge securing a debt owed by Brennan's, Inc. to Plaintiffs in the form of a judgment, neither Pip nor the Succession has alleged in their counterclaims that the judgment obtained by Colbert and Kenyon against Brennan's, Inc. is fraudulent or a simulation, that the pledge was actually a dation, or that the amount of the pledge vastly exceeds the amount of the judgment.  As a result,  the counterclaims do not allege facts sufficient to support a finding that the pledge caused or increased Brennan's, Inc.'s insolvency, and Pip and the Succession have not stated a claim for revocation that is plausible on its face.  *See id.* at 1017.

Plaintiffs' motion to dismiss Pip's and the Succession's revocatory action counterclaims under Rule 12(b)(6) is granted.[11]

---

[11] The Court notes that the documents attached to Plaintiffs' motion to dismiss are central to the revocatory action counterclaims, and thus the documents were properly attached to the motion to dismiss and the Court could and did properly consider them in resolving this Rule 12(b)(6) motion to dismiss.  *See, e.g., Jonesfilm v. Hoffman*, No. 11-1994, 2012 WL 4325461, at *1 (E.D. La. Sept. 20, 2011) (quoting *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Parish,* 456 F. App'x. 336, 340–341 (5th Cir. 2011)

### III.    The Oblique Action Counterclaims

The Court now turns to the oblique action counterclaims asserted by Pip and the Succession. Louisiana Civil Code article 2044 states that "[i]f an obligor causes or increases his insolvency by failing to exercise a right, the obligee may exercise it himself, unless the right is strictly personal to the obligor. LA. CIV. CODE. art. 2044. It is clear from the language of this code article that an insolvent obligor's failure to act is required before an oblique action may asserted by an obligee.

Pip and the Succession allege they are entitled to assert a legal malpractice action against Colbert and Kenyon as oblique plaintiffs, but in both oblique action counterclaims, it is alleged that Brennan's, Inc. instituted a legal malpractice action against Colbert and Kenyon in 2004.[12] Taking these allegations as true, as the Court must, the oblique actions fail to state a cause of action for which relief may be granted. Louisiana law does not allow for a third party obligee to step into the shoes of an insolvent obligor and assert a right on behalf of the obligor unless the obligor has failed to assert that right. Because Brennan's, Inc. instituted a legal malpractice action, it could not have failed to act in that regard, and thus there is no basis in Louisiana law for an oblique action. The Court need not consider Plaintiffs' other arguments for the dismissal of the oblique action counterclaims.

Plaintiffs' motion to dismiss Pip's and the Succession's oblique action counterclaims under Rule 12(b)(6) is granted.

---

("When considering a Rule 12(b)(6) motion, a court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.")). The Court rejects the Succession's argument that the Court either should not have considered those attachments or should have converted this motion to dismiss to a motion for summary judgment.

[12] *See* R. Doc. 15 at ¶ 36 (Pip); R. Doc. 13 at ¶ 41 (Succession).

### IV. Pip's and the Succession's Crossclaims Against Brennan's, Inc.

Louisiana law required Pip and the Succession to name Brennan's, Inc. as a nominal defendant in their revocatory action and oblique action counterclaims. *See* La. Civ. Code Ann. art. 2042 ("In an action to annul either his obligor's act, or the result of his obligor's failure to act, the obligee must join the obligor and the third persons involved in that act or failure to act."); La. Civ. Code Ann. art. 2044 (to assert an oblique action, "the obligee must join in the suit his obligor and the third person against whom that right is asserted"). Because Brennan's, Inc. is a defendant in this case, Pip and the Succession named Brennan's, Inc. as a nominal defendant-in-crossclaim rather than as a nominal defendant-in-counterclaim.[13] Now that Pip's and the Succession's revocatory action and oblique action counterclaims have been dismissed, there is no basis for and no need for the revocatory action and oblique action crossclaims asserted against Brennan's, Inc.

Pip's and the Succession's revocatory action and oblique action crossclaims against Brennan's, Inc. are dismissed.

### CONCLUSION

For all the reasons set forth herein, **IT IS ORDERED** that Plaintiffs' motion to dismiss be and hereby is **GRANTED.**

**IT IS FURTHER ORDERED** that the revocatory action and oblique action counterclaims asserted by the Succession and Pip against Plaintiffs be and hereby are **DISMISSED** in their entirety.

---

[13] The Succession later amended its crossclaim to add additional crossclaims against Brennan's, Inc. The relief sought in the Succession's revocatory action and oblique action crossclaims is separate and distinct from the relief sought in the amendments to the Succession's crossclaim. The Court has already resolved the issues raised by the amendments to the Succession's crossclaim.

**IT IS FURTHER ORDERED** that the revocatory action and oblique action crossclaims asserted by Pip and the Succession against Brennan's, Inc. be and hereby are **DISMISSED**.

New Orleans, Louisiana, this 21st day of June, 2013.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**